IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEPHANIE FUSCO,                  :     CIVIL ACTION
                                  :     NO. 08-2082
        Plaintiff,               :
                                  :
        v.                        :
                                  :
BUCKS COUNTY of the              :
Commonwealth of Pennsylvania,    :
EDWARD J. DONNELLY,               :
THOMAS WALTMAN and OLIVER J.     :
WILSON                            :
                                  :
        Defendants.              :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          DECEMBER 18, 2009

I.   INTRODUCTION

        This is an employment discrimination and retaliation
case under Title VII of the Civil Rights Act of 1964 ("Title
VII") and the Pennsylvania Human Relations Act ("PHRA").  Before
the Court is Defendants' motion for summary judgment.  For the
reasons that follow, the motion will be granted.

II.  BACKGROUND

    A. Sheriff's Office

        Plaintiff Stephanie Fusco ("Plaintiff") is a current
employee with the Bucks County Sheriff's Office ("Sheriff's
Office").  Plaintiff began working with the Sheriff's Office in
January 1996 as a deputy sheriff and still holds this position.
(Doc. no. 18, Ex. B, Personnel Action Form.)

-1-

Bucks County ("County Defendant") is a political subdivision of the Commonwealth of Pennsylvania. (Am. Compl. at ¶ 2.) Defendant Edward J. Donnelly is Bucks County's Sheriff. (Doc. no. 18, Ex. D, Donnelly Dep. at 9.) The Sheriff is an elected County official who is the County's chief law enforcement officer. (Id.) Sheriff Donnelly runs a Sheriff's Office of 51 sworn deputies, which includes one lieutenant, four sergeants, four corporals, and 42 deputy sheriffs. (Id. at 9, 12, 18, 21.) Defendant Thomas Waltman is the Lieutenant in the Sheriff's Office. (Doc. no. 18, Ex. E, Decl. of T. Waltman at ¶ 1.) Lieutenant Waltman is responsible for the immediate supervision of the sergeants. (Id.) Defendant Oliver Wilson is a Sergeant in the Sheriff's Office. (Id., Ex. D at 18.) Sergeant Wilson is responsible for the immediate supervision of the deputy sheriffs. (Doc. no. 18, Ex. G, Sergeant Deputy Sheriff Job Description.)

The Sheriff's Office is responsible for, among other things, serving civil process, providing courtroom security, and handling and transporting prisoners going through the court system. (Doc. no. 18, Ex. D at 19-20, 23; Ex. H, Deputy Sheriff Job Description.) Deputy Sheriffs serve civil process, investigate and arrest wanted subjects, transport prisoners, and provide security within the court system by escorting prisoners, placing defendants into custody, and operating the holding cell (Ex. D at 23.) The major assignments for deputy sheriffs are

courts, holding cell, zone, warrant squad, and trip car. (Ex. E at ¶ 2.)  There is no difference in salary between the different assignments but some assignments carry more opportunities for overtime work and allow access to a deputy sheriff's vehicle. (Id. at ¶ 3.)  Sergeants are responsible for assigning the deputies to one of these areas, and the length of the assignments varies. (Id. at ¶ 4; Ex. D at 37, 40.)

Deputy sheriffs assigned to the courts are primarily responsible for providing courtroom security including taking inmates back and forth to the court from prison. (Ex. A., Pl.'s Dep. at 57-58.)  A zone assignment involves deputy sheriffs delivering civil papers within a zone, handling levies and evictions and possibly transporting prisoners, if necessary. (Ex. D at 36, 38, 60-61.)  There are two warrant squads who actively search for and arrest individuals with outstanding warrants. (Id. at 39.)  A trip car assignment involves traveling to different counties and state penitentiaries to pick up prisoners who have hearings in the County. (Pl.'s Dep. at 58-59.)

The majority of the deputies are assigned to the holding cell and courtrooms. (Ex. D at 36.)  Currently, there are six deputies assigned to serving civil process; five to the warrant unit; one to firearms and permits; five to transport unit; twelve to the courts; and fourteen to the holding cell. (Doc. no. 18, Ex. I, Bucks County Sheriff's Office Organizational

Chart.) Sergeants and lieutenants will shift employees around to cover the Sheriff Office's needs on an informal, routine basis. (Ex. D at 34-35.) There are currently six female deputies. (Pl's Dep. at 199; Doc. no. 18 at 6 n.4.)

The employees of the Sheriff's Office are covered by the County's policies and procedures. Deputy sheriffs are represented by the American Federal of State, County, and Municipal Employees, District Council 88, AFL-CIO (the "Union"). (Doc. no. 18, Ex. J, Decl. of M. Dolan at ¶ 2; Ex. K, Collective Bargaining Agreement between the Union and County.) The collective bargaining agreement has a specific provision prohibiting the County or Union from discriminating against any employee on the basis of sex. (Ex. K at 11.) The Sheriff's Office is also subject to the County's Non-Discrimination and Harassment Policy. (Ex. J at ¶ 6.; Ex. L, Non Discrimination Policy.) This policy prohibits discrimination based on gender and prohibits anyone from retaliating against an individual who brings a complaint of discrimination. (Id., Ex. L) This non-discrimination policy is distributed to all employees, and the County of Bucks Human Resources Department regularly conducts training concerning the non-discrimination policy for all employees. (Ex. J at ¶ 8.)

B. Plaintiff's Employment with the Sheriff's Office

Plaintiff began working as a deputy sheriff on January 8, 1996. (Ex. B, Personnel Action Form; Ex. Q, Appointment Proclamation, dated 1/8/96.)  Throughout her tenure as a deputy sheriff, Plaintiff has worked in the holding cell, courts, trip car assignment, and zone assignment. (Pl.'s Dep. at 53, 57, 58, 61.)

In 2005, Plaintiff was not selected for two warrant squads. (Id. at 40, 65-66).[1]  Plaintiff claims she complained to Defendant Waltman who responded that her husband made a lot of money, she would likely get pregnant soon and she would probably leave her job as a result. (Pl.'s Dep. at 66.)  Plaintiff also avers that Defendant Donnelly told Plaintiff that she was not selected for the second warrant squad because the work could be dangerous and Donnelly wondered if her husband would approve of her being on the warrant squad. (Id. at 191-192.)  Plaintiff claims that two male deputy sheriffs were appointed to the second warrant squad, both of whom have less seniority and law enforcement experience than Plaintiff. (Id. at 80-81.)  Instead of being selected for the warrant squads, Plaintiff was assigned

_____

[1] Defendants do not address the disputed events regarding the warrant squads created in 2005 and Plaintiff's zone assignment.  Rather, Defendants argue these events are barred by Title VII's statute of limitations. (Doc. no. 18 at 16-18.)  The Court agrees these events are barred by the statute of limitations, discussed infra, but includes an overview of Plaintiff's allegations regarding these events to establish the context for her later claims.

to the Zone 5 (a particular geographical region) assignment. (<u>Id.</u> at 106.)  Plaintiff worked in this assignment for seven to eight months until approximately October or November 2005 when she asked to be removed from her zone assignment. (<u>Id.</u> at 105, 110.)

On July 5, 2006, Plaintiff spoke with Rachael Cherry, Human Resources Generalist with Bucks County, complained that Defendants Wilson and Waltman were picking on her and yelled at her to put her hair up. (Doc. no. 18, Ex. N, Decl. of R. Cherry at ¶ 3.)  Plaintiff and Defendants disagree about whether, at this meeting, Plaintiff complained about gender discrimination or that she was being treated differently because of her sex. (Doc. no. 18 at 7; Doc. no. 19 at 8).  However, Plaintiff did not put her complaint in writing (Ex. N at ¶ 7; Pl.'s Dep. at 295) and the complaint was not investigated. (Pl's Dep. at 175.)

Plaintiff took a seven month medical leave of absence from November 2006 through June 2007. (Pl.'s Dep. at 19; Ex. S, Letter from R. Cherry to Stephanie Fusco, dated 6/5/07.) Plaintiff claims this medical leave was caused by anxiety and stress related to the way she was being treated at work by her supervisors. (Pl.'s Dep. at 182-184, 315-318; Am. Compl. at ¶ 19.)  On February 28, 2007, while on medical leave, Plaintiff filed a complaint of gender discrimination against the County

with the Equal Employment Opportunity Commission ("EEOC").[2] (Doc. No. 19, Ex. G, Letter from Counsel to EEOC.)

When Plaintiff returned to work, she was pregnant. (Pl.'s Dep. at 15.) Due to her pregnancy medical restrictions, she could not pull, push or lift over 20 pounds and she was assigned to work in the office. (Ex. E at ¶ 9; Ex. T, Medical Note from Aaron S. Hasiuk, M.D., dated 6/25/07.) In the office assignment, Plaintiff was responsible for data entry of warrants, answering the phone and filing out paperwork. (Pl.'s Dep. at 20, 44.) Plaintiff worked in the office from June 2007 until she went on for maternity leave in December 2007. (Id. at 19.)

Plaintiff alleges that during the period from June 2007 until December 2007 she was subjected to various acts of retaliation from her supervisors. She avers that Sheriff Donnelly refused to speak with her (id. at 195); the Department refused to permit her to order maternity uniforms (id. at 261-262); the Department refused to let her leave work fifteen minutes early on Fridays (id. at 286); she was required to surrender her firearm even though she claims no other deputies assigned to desk duty had ever before been required to surrender their weapon (id. at 45); she was reprimanded for taking a break

_____

[2] Plaintiff claims to have filed additional retaliation charges with the EEOC on March 17, 2008, and August 28, 2008, but has provided no other evidence of these complaints or charges. (Doc. no. 19 at 12.)

in the garage area and a male deputy was allowed to take a break in the garage area (id. at 25-26); Defendant Waltman frequently called Plaintiff "missy" and reprimanded her in a belittling manner (id. at 256-57); Plaintiff was restricted from the Deputy Sheriff's break room (id. at 27); Plaintiff was reprimanded for drinking coffee in a hallway and was told by another deputy that Defendant Wilson said the Department was out to get her. (Doc. no. 19, Ex. D, Pl.'s Dep. at ¶ 6.) Finally, Plaintiff claims she was not selected for two open Sergeant positions in December 2007. (Am. Compl. at ¶ 22.) Plaintiff claims two males with less seniority, and one who had less law enforcement experience, were selected for promotion. (Id.)

Defendants present a different version of the events occurring during the period from June 2007 until December 2007 and reject Plaintiff's assertions that she was subject to any gender discrimination. Defendants claim there is no general light duty policy but that deputies who are pregnant or injured on the job are given the opportunity to work a light duty assignment. (Doc. no 18, Ex. E at 54.) They claim that pregnant deputies who are assigned light duty are restricted from entering or working in the holding cell area and taking a break in the garage area, while pregnant employees from other agencies may work in the holding cell area because they are not under the supervision of the Sheriff's Office. (Ex. E at ¶ 6.) Defendants

further claim that Sergeant French, the firearms instructor for the County, recommended that Plaintiff and another male deputy return their firearms based on the fact they were both on light duty and had not qualified for firearms for 9 and 14 months, respectively. (Doc. no. 18, Ex. U, Decl. of T. French at ¶ 3-4; Ex. V, Email from Sergeant French to Lieutenant Waltman, dated 7/2/07.)  When Plaintiff returned from maternity leave, she re-qualified and currently carries a firearm in the performance of her duties. (Ex. U at ¶ 10; Pl.'s Dep. at 309.)

Defendants claim that the selection process of the two open sergeant promotions in 2007 were based on of a 20 minute oral exam examination conducted by an outside, three-member board. (Doc. No 18, Ex. D at 47-49; Ex. Z, Oral Board Sergeant's Exam.)  The examination board members did not have any background information on the candidates other than candidates' names and positions. (Id. at 48-49; Ex. Z at 1.)  The board members gave each candidate a numerical score for each question, based on a 20-point scale. (Ex. D at 52.)  Plaintiff placed fourth on the examination. (Ex. A at 232; Ex. AA, Oral Examination score summary sheet.)  The two candidates with the highest scores were promoted to the open sergeant positions. (Ex. D at 54; Ex. AA.)

C. Federal Court Proceedings

Plaintiff filed the instant Complaint on May 5, 2008. (Doc. no. 1.)  On August 14, 2008, Plaintiff filed an Amended

Complaint. (Doc. no. 10.) Plaintiff's first claim for relief is asserted against the County only and alleges discrimination in violation of Title VII and the PHRA. Count I alleges that Plaintiff "has been, and continues to be, subjected to disparaging and stereotypical statements based on gender by [the Defendant County]." (Id. at ¶ 26.) In the second claim for relief, Plaintiff alleges retaliation in violation of Title VII against the Defendant County. Count II alleges that "Plaintiff filed a complaint of gender discrimination with the EEOC and has been thereafter repeatedly subjected to retaliation by Defendant County for having filed said gender discrimination complaint." (Id. at ¶ 29.) Plaintiff's third claim for relief is asserted against the County and the individual Defendants and alleges retaliation in violation of the PHRA. She alleges "Plaintiff dual-filed complaints. . . with the EEOC and PHRC and has been thereafter repeatedly subjected to retaliation by the County for having filed said gender discrimination complaints. Co-Defendants Donnelly, Waltman and Wilson aided and abetted Defendant County's retaliation by subjecting Plaintiff to unlawful retaliation individually, or by failing to prevent said retaliation, while acting in the scope of their employment. . . ." (Id. at ¶¶ 33-34.)

Defendants filed a motion for summary judgment. (Doc. no. 18.) Defendants, in the instant motion, aver that some of the

acts which form the basis for Plaintiff's Title VII claim are barred by Title VII's statute of limitations.  In addition, Defendants argue that the Court should grant summary judgment on Plaintiff's remaining timely Title VII and PHRA claims alleging gender discrimination and retaliation because Plaintiff has failed to produce sufficient evidence from which a reasonable jury could find for Plaintiff on her claims of a hostile work environment.  Plaintiff filed a timely response in opposition to Defendants' Motion. (Doc. no. 19.)  Defendants subsequently filed a reply brief. (Doc. no. 23.)  The matter is now ripe for disposition.

II.  LEGAL STANDARD

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact. <u>Id.</u> at 248-49. "In considering the evidence, the court should draw all

reasonable inferences against the moving party." <u>El v. Se. Pa.</u>
<u>Transp. Auth.</u>, 479 F.3d 232, 238 (3d Cir. 2007).

"Although the initial burden is on the summary judgment
movant to show the absence of a genuine issue of material fact,
'the burden on the moving party may be discharged by showing-that
is, pointing out to the district court-that there is an absence
of evidence to support the nonmoving party's case' when the
nonmoving party bears the ultimate burden of proof." <u>Conoshenti</u>
<u>v. Pub. Serv. Elec. & Gas Co.</u>, 364 F.3d 135, 140 (3d Cir. 2004)
(quoting <u>Singletary v. Pa. Dep't of Corr.</u>, 266 F.3d 186, 192 n.2
(3d Cir. 2001)).  Once the moving party has thus discharged its
burden, the nonmoving party "may not rely merely on allegations
or denials in its own pleading; rather, its response must-by
affidavits or as otherwise provided in [Rule 56]-set out specific
facts showing a genuine issue for trial." Fed. R. Civ. P.
56(e)(2).


III. LEGAL ANALYSIS

    1. Analysis of Plaintiff's Claims

        At the outset, the Court first addresses the manner
in which it will analyze Plaintiff's claims.  It is difficult to
understand Plaintiff's precise arguments, as her claims in the
Amended Complaint differ from those expressed in her response to
Defendants' motion for summary judgment.  It is, therefore,

necessary for the Court to define Plaintiff's claims and explain how each will be considered.

Plaintiff asserts three claims for relief in her Amended Complaint. In Count One, Plaintiff generally alleges gender discrimination in violation of Title VII and the PHRA, but does not specify a claim of individual disparate treatment based on her gender or a hostile work environment claim.[3] (Am. Compl. at ¶¶ 24-27.) In Counts Two and Three, Plaintiff makes federal and state claims of retaliation by the Defendants based on a hostile work environment. Each of Plaintiff's claims will be considered in turn.

In support of her discrimination claim, Plaintiff offers three categories of evidence: (1) two instances in 2005 when she was not selected for a warrant squad; (2) her assignment to and voluntary resignation from the Zone 5 assignment; and (3) several instances where she was subjected to disparaging and discriminatory comments and behavior related to her gender. (Doc. no. 19, Pl.'s Resp. to Def.'s Mot. for Summ. J. at 5-9.) As to the first two categories, the Court will consider whether they are time barred. As to the third category, these allegations are analyzed as a claim for a hostile work environment based on her

---

[3] Plaintiff alleges to have been subjected to discrimination based on gender "with respect to promotions, duty assignments and training" as well we being "subjected to disparaging and stereotypical statements based on gender . . . ." (Am. Compl. at ¶¶ 25,26.)

gender.

In support of her retaliation claims, Plaintiff alleges
a series of retaliatory actions that she suffered in 2007 and
2008 after filing a charge of gender discrimination with the
EEOC.  The retaliatory actions, some of which are similar to the
incidents which form the basis of her hostile work environment
claim, allegedly became increasingly hostile and regular. (Id. at
18-20.)  The Court will analyze Plaintiff's retaliation claims
under the hostile work environment retaliation standard.

2. Title VII and PHRA: Statute of Limitations Analysis

Title VII and the PHRA protect employees from
discrimination by their employers on the basis of race, color,
religion, sex or national origin. 42 U.S.C. § 2000e-2; and 43
P.S. § 951 et seq.  In order to pursue a discrimination or
retaliation claim under Title VII and the PHRA, the plaintiff
must first exhaust administrative remedies under those Acts as
follows.  One, pursuant to the PHRA, a plaintiff must file an
administrative charge with the Pennsylvania Human Relations
Commission ("PHRC") within 180 days of the alleged act of
discrimination. Pa. Stat. Ann. 43 § 959(h).  Two, pursuant to
Title VII, a plaintiff must file an administrative charge with
the EEOC within 300 days of the alleged act of discrimination, or
within thirty days after receiving notice that the state or local
agency has terminated the proceedings under state or local law,

whichever is earlier. 42 U.S.C. § 2000e-5 (e)(1).

Before filing a complaint in the District Court, the employee must obtain a "right to sue" letter from the EEOC. Id. If the agency fails to take action after the 300 day period, the employee may request a "right to sue" letter, and the EEOC must promptly provide one. Id.

Filing deadlines imposed by both the PHRA and Title VII are strictly construed. Interpreting the PHRA 180-day filing deadline, the Third Circuit noted that "Pennsylvania courts have strictly interpreted [the PHRA administrative requirements] and repeatedly held that 'persons with claims that are cognizable under the Human Relations Act must avail themselves of the administrative process of the Commission or be barred from the judicial remedies authorized in Section 12(c) of the Act.'" Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997) (quoting Vincent v. Fuller Co., 616 A.2d 969, 974 (Pa. 1992)). Similarly, the 300 day deadline imposed by Title VII is strictly enforced when the employment actions challenged as discriminatory are isolated, discrete acts, such as the failure to promote. Amtrak v. Morgan, 536 U.S. 101, 113 (2002).

Here, Plaintiff filed a formal charge of discrimination with the EEOC on February 28, 2007,[4] which was cross filed with

_____

[4] The Plaintiff provides two different dates for when she allegedly filed a complaint of gender discrimination against the Defendant County with the EEOC. The amended complaint avers that

-15-

the PHRC on August 11, 2007. (Doc. no. 10 at ¶ 29; Doc. no. 18, Ex. DD, Charge of Discrimination, dated 8/11/07.)  Thus, the Court may not consider any actions that occurred before May 4, 2006 (300 Days before February 28, 2007) under Title VII.

Defendant challenges two distinct acts of discrimination as barred by the statute of limitations: (1) Plaintiff's failure to be selected for two warrant squads; and (2) her assignment to and voluntary resignation from the Zone 5 assignment.  These acts occurred in 2005 and early 2006, before May 4, 2006. (See Pl.'s Dep. at 66-68, 77, 86; Ex. JJ, Inter-Office Correspondence.)

Plaintiff responds that these two distinct acts are part of an ongoing pattern and practice of discrimination by the Defendants, arguing that the statute of limitations should be tolled under the continuing violation theory. (Doc. no. 19, Pl.'s Resp. to Def.'s Mot. for Summ. J. at 20-21.) Plaintiff claims these two distinct acts are related to a pattern of discrimination dating back to 2005 and that "some [of the discriminatory events] occurred within the 300 day EEOC filing

_____

Plaintiff filed complaint of gender discrimination with the EEOC on February 5, 2007. (Doc. no. 10 at ¶ 29.)  However, the Plaintiff's response to Defendant's motion for summary judgment avers that she filed a complaint of gender discrimination on February 28, 2007, and cites to the amended complaint that contains a conflicting date. (Doc. no. 19 at pp. 10.)  The Court finds that the Plaintiff counsel's letter to the EEOC is dated February 28, 2007, and will use this date to calculate the filing period (Doc. no. 19, Ex. G, Letter to EEOC, dated 2/28/07.)

period," but she fails to identify which, if any, occured during the May 4, 2006, to February 28, 2007, 300 day relevant time period. (Id. at 21.) Plaintiff avers no specific acts that took place in the relevant time period.

Under the continuing violations theory, "a plaintiff may pursue a Title VII claim for discriminatory conduct that began prior to the filing period if he can demonstrate the act is part of an ongoing practice or pattern of discrimination of the defendant." Rush v. Scott Specialty Gases, 113 F.3d 476, 481 (3d Cir. 1997). To prove a continuing violation, a plaintiff must establish that: (1) at least one discriminatory act occurred within the filing period; and (2) the harassment was more than isolated, sporadic acts of intentional discrimination. Id. In this evaluation, courts generally consider the subject matter, frequency, and permanence of the discriminatory conduct. Id. (citing Berry v. Bd. of Supervisors of La. State Univ., 715 F.2d 971 (5th Cir. 1983)).

The continuing violation theory is not applicable to the two discrete acts of discrimination that Defendants challenge because such acts are properly considered separate, actionable unlawful practices. AMTRAK v. Morgan, 536 U.S. 101, 114 (2002); O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006). "[A] plaintiff "may not base her . . . suit on conduct that occurred outside the statute of limitations unless it would have

-17-

been unreasonable to expect the plaintiff to sue before the statute ran on that conduct, as in a case in which the conduct could constitute, or be recognized, as actionable harassment only in the light of events that occurred later. . . ." <u>Scott Specialty Gases</u>, 113 F.3d at 482. In addition, if a Plaintiff believes that an act is discriminatory at the time it occurs, and complains about it, it is less likely to be viewed as part of a continuing violation. <u>See</u> <u>Choma v. Blue Cross Blue Shield of Del.</u>, No. 06-486-JJF, 2008 U.S. Dist. LEXIS 70255, at *817-18, 2008 WL 4276546 (D. Del. Sept. 18, 2008). Our Court of Appeals has cautioned that "a court must be circumspect in relating discrete incidents to each other." <u>Scott Specialty Gases</u>, 113 F.3d at 484. The plaintiff bears the burden of demonstrating that the continuing violation doctrine applies. <u>Larsen v. State Employees' Ret. Sys.</u>, 553 F. Supp. 2d 403, 417 (M.D. Pa. 2008).

In this case, considering all applicable factors, Plaintiff has not met that burden with respect to her failure to be selected for the two warrant squads formed in 2005 and her March 2005 assignment to, and voluntary resignation from, the Zone 5 assignment. Under these circumstances, the failure to promote, wrongful discipline, compensation decisions and undesirable assignments are discrete events, and are not subject to a continuing violation analysis. <u>See</u> <u>O'Connor v. City of Newark</u>, 440 F.3d 125, 127 (3d Cir. 2006); <u>see also</u> <u>Sgro v.</u>

Bloomberg L.P., 331 Fed. Appx. 932 (3d Cir. 2009) (non-precedential opinion).  Accordingly, neither of the contested actions are subject to a continuing violation analysis.

Moreover, if Plaintiff believed that she was improperly denied a promotion, or received an improper work assignment, she should and could have reacted at the time.  Indeed, Plaintiff acknowledges that she complained about these events at the time that they occurred.  (Pl.'s Dep. at 278, 296.)  These are distinct events that do not become significant in light of later events. "Waiting to see what would happen next was pointless; the harm, if any, already was inflicted." Scott Specialty Gases, 113 F.3d at 484.

As this Court has previously held, the continuing violation theory is not viable where a plaintiff was aware of, and had complained about, hostile treatment because allowing the plaintiff "to avoid the statutory timely filing requirement by invoking the continuing violations doctrine would be inconsistent with the doctrine's equitable premise that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated." Jones v. WDAS FM/AM Radio Stations, 74 F. Supp. 2d 455, 463 (E.D. Pa. 1999) (Robreno, J.).  As a matter of law, the disputed events in 2005 and 2006 are time barred, and are not independently actionable as gender discrimination under Title VII or the PHRA.

3. Title VII and PHRA: Substantive Analysis

A. Hostile Work Environment (Count One)

Defendants argue that Plaintiff has failed to produce sufficient evidence to support her hostile work environment claim, under Title VII and the PHRA.[5]  To establish a hostile work environment claim, plaintiff must show that: (1) she suffered intentional discrimination because of her gender; (2) the discrimination was severe or pervasive;[6] (3) the discrimination detrimentally affected plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same protected class in that position; and (5) the existence of vicarious or respondeat superior liability. Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2001); Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081 (3d Cir. 1996).

In evaluating a hostile work environment claim, the Court must consider the totality of the circumstances, rather

_____

[5] Because the analysis required for adjudicating Plaintiff's Title VII and PHRA claims is identical, the court will consider those two claims together. See Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 317, n.3 (2000) (stating that since the analysis required for adjudicating a PHRA claim is identical to a Title VII inquiry "we therefore do not need to separately address" the PHRA claim).

[6] The Third Circuit has "often stated that discriminatory harassment must be 'pervasive and regular.' But the Supreme Court's standard is 'severe or pervasive.' The difference is meaningful and the Supreme Court's word controls, so [the Court] uses the severe or pervasive standard here." Jensen v. Potter, 435 F.3d 444, 449 n.3 (3d Cir. 2006).

-20-

than just individual incidents, and must be mindful that isolated incidents, unless extremely serious, and offhand comments are not sufficient to sustain a claim. Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005). These circumstances may include the frequency of the allegedly discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance. Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

Generally a plaintiff cannot rely upon casual, isolated or sporadic incidents to support her claim of a hostile work environment. Andrews v. City of Phila., 895 F.2d 1469, 1482 (3d Cir. 1990); Harris, 510 U.S. at 20. Conduct that is merely offensive or which has the effect of making an employee's life at work unpleasant or uncomfortable is, without more, not actionable. Id. at 21-22. Moreover, "mistreatment that is not motivated by the plaintiff's protected class does not create a hostile work environment." Gharzouzi v. Nw. Human Servs. of Penn., 225 F. Supp. 2d 514, 534 (E.D. Pa. 2002). However, "the advent of more sophisticated and subtle forms of discrimination requires that [the Court] analyze the aggregate effect of all evidence and reasonable inferences therefrom, including those concerning incidents of facially neutral mistreatment in evaluating a hostile work environment claim." Cardenas, 269 F.3d at 261-62.

Plaintiff's timely allegations that support her hostile work environment claim are as follows: (1) she was "subjected to persistent harassment at the hands of the Sergeant Deputy Sheriffs, particularly defendants Waltman and Wilson, who she believed were hostile towards women in the workplace" (Doc. no. 19 at 8); (2) on July 5, 2006, Plaintiff complained to the County's Human Resources department about gender discrimination and was told that her complaint was a "union problem" and did nothing further (id.); (3) when Plaintiff returned to work after complaining to Human Resources no supervisor except one would speak to her (id.); and (4) Sheriff Donnelly told her that "some sergeants have a problem with strong females." (id.) Plaintiff believes these events are pervasive, occurred over a period of time, and could be found to have infected her work experience.

Even when the Court considers the evidence in the light most favorable to Plaintiff, and assumes that all of Plaintiff's allegations regarding her supervisors' conduct are true, her claims do not rise to a level that would allow a reasonable factfinder to conclude that Plaintiff was forced to work in a hostile environment because of her gender. Defendants challenge only Plaintiff's claims as to the first, second and fourth prongs of the hostile work environment standard. Defendants do not dispute that Plaintiff was detrimentally affected by the alleged discrimination or that respondeat

superior liability exists.  Accordingly, the Court will not analyze the third or fifth prongs of Plaintiff's claim.

As to the first prong of the hostile work environment claim, Plaintiff does not allege that her supervisors made any direct insults, jokes, or other negative statements to the Plaintiff relating to Plaintiff's gender.  Although Plaintiff has pointed to evidence of harassment by her supervisors, she has presented no evidence for a reasonable factfinder to conclude that she was harassed because of her sex.[7] Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80-81 (1998).

As to the second prong, the complained-of conduct is not "pervasive" or "severe" based on the existing record.  As to pervasiveness, there is no indication that these events occured regularly.  In fact, Plaintiff provides no date as to when these events occured beyond her July 5, 2006, meeting with the Human Resources Department. (Doc. no. 19 at 8-9.)

As to severity, the incidents Plaintiff describes are not "severe" for the purposes of Title VII.  See Harris, 510 U.S. at 21; see also Ahmed v. Lowe's Co. Inc., No. 06-4798, 2008 WL 2967061, at *7-8 (E.D. Pa. July 31, 2008) (Baylson, J.) (granting summary judgement on plaintiff's hostile work environment claim where plaintiff relied on his own deposition testimony in support

---

[7]  Plaintiff's claims that her supervisors ignored her are in tension with her claims that they were also openly hostile.

of his claim and "[n]owhere [did] plaintiff claim that [his supervisor] or any of his co-workers used racially insensitive language or threatened him because of his race."). The testimony that Plaintiff describes was not verbally threatening, intimidating or abusive. See Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998) (holding that "[s]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"); see also Weston v. Commw. of Pa., 251 F.3d 420, 428 (3d Cir. 2001) ("[T]he mere utterance of an epithet, joke, or inappropriate taunt that may cause offense does not sufficiently affect the conditions of employment to implicate Title VII liability") (citation omitted). The fact that Plaintiff's supervisors may have been consistently rude, or otherwise avoided her, does not alone evidence a hostile work environment. See Duffy v. Dep't of State, 598 F. Supp. 2d 621, 630 n.8 (D. Del. 2009).

As to the fourth prong, "[e]vidence that others were harassed may tend to show that a plaintiff's claims are objectively reasonable." West v. Phila. Elec. Co., 45 F.3d 744, 757 (3d Cir. 1995). This objective requirement "puts a check on the overly sensitive plaintiff who is unreasonably affected by acts of discrimination." Gharzouzi, 225 F. Supp. 2d at 532 (holding that plaintiff's assertions that other employees were

harassed was insufficient to establish that the discrimination would detrimentally affect a reasonable member in the plaintiff's position).

At her deposition, Plaintiff testified that the other current female deputies have suffered the same alleged discrimination she complained of in this case. (Pl.'s Dep. at 236.) Yet, Plaintiff has presented no corroborating evidence, by way of her coworkers' deposition testimony or affidavit. On the other hand, Defendants presented evidence from three other current female deputies that worked for the Sheriff's Office during the time period relevant to Plaintiff's claims who contradicted Plaintiff's claims. (Doc. No. 18, Ex. EE, Decl. of J. White at ¶¶ 3-5; Ex. FF, Decl. of M. Malestra at ¶¶ 4-6; Ex. GG, Decl. of D. Hartzell at ¶¶ 3-5.)

Finally, despite the full benefit of discovery, plaintiff still relies, at this late stage, only on "'uncorroborated generalities'." Duffy, 598 F. Supp. 2d at 628 (dismissing gender-based hostile work environment claim where plaintiff failed to produce evidence of hostility beyond her own testimony); see also Shramban v. Aetna, 262 F. Supp. 2d 5331, 536 (E.D. Pa. 2003) (holding that plaintiff failed to produce enough evidence beyond her deposition testimony to create a sufficient issue of fact to be resolved by a jury), aff'd 115 Fed. Appx. 578 (3d Cir. 2004). The Plaintiff offers no support, beyond her own

testimony, to corroborate her claims. A "plaintiff cannot rely on unsupported assertions, speculation, or conclusory allegations to avoid a motion for summary judgment[.]" <u>Solomon v. Society of Automotive Engineers</u>, No. 01-3083, 2002 U.S. App. LEXIS 15321, at *3-4 (3d Cir. July 30, 2002) (affirming district court's conclusion that plaintiff failed to establish a prima facie case of reverse gender discrimination because the only evidence in support of his claims that women received preferential treatment and that his supervisor was hostile towards men in general was his own testimony).

Viewing all facts and reasonable inferences in a light most favorable to Plaintiff, she has failed to provide sufficient evidence to show that a genuine issue of material fact exists as to whether Defendants created a hostile work environment based on her gender. Accordingly, the Court will grant Defendants' motion for summary judgment as to Plaintiff's hostile work environment claim.

B. Retaliation (Counts Two and Three)

1. Retaliation Legal Standard and Background

Plaintiff also asserts retaliation claims under Title VII (Count Two) and the PHRA (Count Three).[8]  To establish a

---

[8] The same standards, decisional law, and analysis apply to retaliation claims under both Title VII and the PHRA. <u>Slagle v. County of Clarion</u>, 435 F.3d 262, 265 n.5 (3d Cir. 2006).

hostile work environment claim for retaliation, the plaintiff must prove: "(1) [she] suffered intentional discrimination because of [her] protected activity;[9] (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected [her]; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present." Jensen, 435 F.3d at 449; accord Hamera v. County of Berks, 248 Fed. Appx. 422, 424 (3d Cir. 2007)(non-precedential opinion).

Plaintiff avers several instances that she claims were retaliatory after she filed a charge of discrimination with the EEOC on February 28, 2007. (Doc. no. 19, Ex. G).  Plaintiff describes increased hostility when she returned to work in June 2007 following her medical leave of absence.  She claims: (1) Sheriff Donnelly refused to speak with her (id. at 10, 19); (2) the Department refused to permit her to order maternity uniforms (id.); (3) the Department refused to let her leave work fifteen

_____

[9] The Jensen court explained that, in order to prove the first element of a retaliation claim based on a hostile work environment, a Plaintiff must show a causal link or connection between the protected activity and the adverse employment action. Jensen, 435 F.3d at 449.  "This element differs in wording, but not in substance, from our usual retaliation test's requirement of a 'causal connection' between the protected activity and the adverse employment action." Id. at 449, n.2.  In other words, a plaintiff must show a causal link to raise the necessary inference of retaliatory intent.

minutes early on Fridays, an informal policy in the office (<u>id.</u>);
(4) Plaintiff was required to surrender her firearm (<u>id.</u>); (5) she
was reprimanded for taking a break in the garage area (<u>id.</u>); (6)
Defendant Waltman frequently called Plaintiff "missy" and
reprimanded her in a belittling manner (<u>id.</u>); (7) Plaintiff was
restricted from the Deputy Sheriff's break room (<u>id.</u> at 11, 19);
(8) Plaintiff was reprimanded for drinking coffee in a hallway
and was told by another deputy that Defendant Wilson said the
Department was out to get her (<u>id.</u>); and (9) Plaintiff claims she
was not selected for two open Sergeant positions in December 2007
(<u>id.</u> at 11.).

Defendants challenge Plaintiff's ability to establish
the first and second prongs of the hostile work environment
retaliation standard.  More specifically, Defendants attack the
sufficiency of Plaintiff's evidence regarding the causal
connection between her EEOC complaint and the alleged retaliation
and claim she cannot establish intentional discrimination because
of her protected activity.  Defendants also challenge the
"severity" or "pervasiveness" of the alleged harassment.

2. Intentional Discrimination Prong

Defendants argue that Plaintiff cannot establish a
causal connection between the protected activity and the alleged
retaliatory activity.

In order to establish a causal connection, a plaintiff

must demonstrate either (1) a temporal proximity between the two events that is "unusually suggestive" of retaliation, see Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004), or (2) timing plus other evidence, such as evidence that the employer engaged in a "pattern of antagonism" with the plaintiff, see Robinson v. Se. Pa. Transp. Auth., 982 F.2d 892, 895 (3d Cir. 1993) (A "pattern of antagonism" existed because the employer engaged in a "constant barrage of written and verbal warnings . . ., inaccurate point totalings, and disciplinary action, all of which occurred soon after plaintiff's initial complaints and continued until his discharge.") (internal quotation marks omitted).

The first prong requires a close temporal proximity between the protected activity and the adverse employment action. Id. Timing alone is normally insufficient to raise an inference of causation. See Weston v. Pennsylvania, 251 F.3d 420, 431 (3d Cir. 2001) (holding that timing is rarely sufficient to raise an inference of causation). The Third Circuit has recognized that causation may be established by timing alone where the adverse employment action follows within days of the complaint of discrimination. See Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) (holding that timing of termination two days after employer learned of EEO complaint raised inference of causation); but cf. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir.

1997) (causation prong not established on timing alone where 19 months passed following protected activity and adverse employment action), Williams v. Phila. Hous. Auth., 380 F.3d 751, 760 (3d Cir. 2004) (two months was too long to permit an inference of causation and not "unusually suggestive" of retaliation.)

Timing, however, together with other types of suggestive evidence, can be sufficient to demonstrate the causal link. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280-281 (3d Cir. 2000). For example, the Court of Appeals held that timing combined with evidence of vague or inconsistent reasons given by an employer for an employee's termination was sufficient to satisfy the causation prong of the prima facie case. Abramson, 260 F.3d at 289 ("Here, as we found in our discussion of the discrimination claim, [plaintiff] has succeeded in both casting doubt on the reasons [her employer] proffered for her termination, and in demonstrating that those reasons were vague and inconsistent."); Waddell v. Small Tube Prods., Inc., 799 F.3d 69 (3d Cir. 1986): see also EEOC v. L.B. Foster Co., 123 F.3d 746, 753-54 (3d Cir. 1997).

With regard to the Sheriff's Office, Plaintiff filed her first EEO complaint in February 2007. Several of the alleged retaliatory incidents did not occur until June or July 2008, which is sixteen or seventeen months after her complaint was

filed,[10] and almost a year after the County learned of her

complaint in August 2007.[11]  Assuming Defendants were aware of

Plaintiff's protected activity, the passage of time between the

time the County became aware of the discrimination charge and the

alleged retaliatory conduct undercuts any alleged causal

connection.  Timing alone is not unusually suggestive of

retaliatory behavior on the part of Defendants.  See, e.g.,

Krouse, 126 F.3d at 503.

Furthermore, the Court notes that Plaintiff has

supplied no dates to support most of the alleged discriminatory

acts and has not alleged any connection between her protected

activity and the alleged harassment.  For instance, Plaintiff

---

[10] As Defendants note in their reply brief, Plaintiff
testified that Sheriff Donnelly refused to speak to her after she
returned from maternity leave in June 2008, not in June 2007.
(Pl.'s Dep. at 195-196.)  Moreover, Plaintiff testified that she
was not allowed to order new uniforms after she returned from her
maternity leave in June 2008, not after she returned from her
medical leave in June 2007. (Doc. no. 23, Ex. NN, Pl.'s Dep at
261-62.)

[11] There is no evidence that Defendants were aware of
Plaintiff's EEOC complaint until late August 2007.  Defendants
claim that they did not receive notice of the complaint until
August 24, 2007, two months after Plaintiff returned to work from
her medical leave.  (Doc. no. 19 at 19 n.1; Doc. no. 23, Ex. OO,
Notice of Charge of Discrimination dated 8/24/07.)  Any alleged
retaliatory events that Plaintiff claims to have occured before
August 2007 cannot establish a causal connection because she has
not shown that Defendants were aware of her protected activity.
See e.g., Jones v. School Dist. of Phila., 198 F.3d 403, 415 (3d
Cir. 1999) (affirming grant of summary judgment in Title VII
retaliation claim because the decision makers had no knowledge of
the protected conduct).

argues the Department required her to surrender her firearm even
though no other deputies assigned to desk duty had ever been
required to surrender their weapon. (Doc. no. 19 at 10, 19.)
Yet, the evidence shows that Plaintiff was asked to, and did,
return her firearm in July 2007, before the record indicates that
the Sheriff's Office was even aware of her EEOC complaint.[12]
(Doc. no. 23 at Ex. OO.)

3. Severe or Pervasive Prong

Finally, Plaintiff cannot establish any of the
remaining allegedly retaliatory conduct as severe or pervasive.[13]
As an initial consideration, as explained earlier, she does not

---

[12] Plaintiff does not contest Defendants' argument in their
motion for summary judgement that Sergeant French, the firearms
instructor, recommended that two deputy sheriffs (Plaintiff and a
male deputy) surrender their firearms due to legal concerns
because both deputies were on light duty with medical
restrictions and both had not participated in firearms training
or qualifications in over six months. (Doc. no. 18, Ex. U at ¶¶
3-4.)  This evidence is uncontested and cannot be used to support
Plaintiff's retaliation claim, regardless of the speculative
timing.

[13] It is unclear if Plaintiff means to include the December
2007 sergeant position selection process, where two males were
selected over the Plaintiff, as part of her retaliation claims.
In her response brief to the summary judgment motion, Plaintiff
does not list this event as part of her case of retaliation based
on a hostile work environment. (Doc. no. 19 at 18-19.)  This
distinct act of a failure to promote should be argued as a
disparate treatment claim.  Thus, the Court will not consider
this event for the hostile work environment retaliation claims.
Regardless, Plaintiff does not contest the Defendant's
legitimate, nondiscriminatory reason for not promoting her or
argue it is a pretext for discrimination. (Doc. no. 18 at 24-27.)
Moreover, she has presented no evidence that she was not promoted
to sergeant because of her sex.

support her retaliation claim with any corroborating evidence beyond her own deposition and affidavit testimony. (Doc. no. 19 at 18-20.) At the summary judgment stage, Plaintiff cannot rely on unsupported and conclusory allegations. See <u>Williams v. Borough of W. Chester</u>, 891 F.2d 458, 460 (3d Cir. 1989).

Plaintiff cites a number of instances of harassment including: Sheriff Donnelly not speaking to her; the Department refusing to let her order maternity uniforms; the Department refusing to let her leave work fifteen minutes early; the Department reprimanding her for taking a break in the garage and drinking coffee in the hallway; Plaintiff not being permitted in the break room; and Defendant Waltman calling Plaintiff "missy". Even if true, while rude and not worthy of a professional working environment, neither singularly or in coordination, rise to the level of severe or pervasive harassment that would permeate the workplace with "discriminatory intimidation, ridicule and insult." <u>Harris</u>, 510 U.S. at 21.

While Title VII prohibits discrimination, it does not regulate interpersonal relations at the workplace nor command general good manners. These cited instances occurred over a period of at least a year and were not physically or verbally threatening, intimidating or abusive. Rather, Plaintiff's treatment reveals the type of petty slights for which Title VII does not provide a remedy. See <u>Jensen</u>, 435 F.3d at 451 ("The

statute prohibits severe or pervasive harassment; it does not mandate a happy workplace.").

Plaintiff cannot establish a claim of hostile work environment retaliation and, therefore, her claim fails as a matter of law.

IV.  CONCLUSION

For the aforementioned reasons, summary judgment is granted for the Defendants.  An appropriate Order will follow.